**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL SHOULTS, JR,

         Plaintiff,

 - v -                Civ. No. 9:14-CV-1184
                     (GLS/DJS)

MD PANG L. KOOI, *Facility Health Service Director*; CARL J. KOEGNISMANN,[1] *Chief Medical Officer*,

         Defendants.

**APPEARANCES:**       **OF COUNSEL:**

MICHAEL SHOULTS, JR.
Plaintiff, *Pro Se*
11-B-1527
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

HON. ERIC T. SCHNEIDERMAN   DENISE P. BUCKLEY, ESQ.
Attorney General of the State of New York Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Michael Shoults, Jr., brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs in

---

[1] Upon information and belief, the correct spelling of this individual's name is "Koenigsmann" and the Court will refer to him accordingly and direct the Clerk of the Court to fix the Docket Report.

violation of the Eighth Amendment. Dkt. No. 1, Compl. Currently pending before the Court is Defendants' Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), based upon Plaintiff's alleged failure to exhaust his available administrative remedies prior to bringing this action. Dkt. No. 12. Plaintiff opposes the Motion. Dkt. No. 14. For the reasons that follow, this Court recommends **denying** the Motion.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v.*

*Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id*.

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above

the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, I consider the plausibility of Plaintiff's Complaint.

## II. FACTS

In accordance with the above standard of review, the following facts adduced from the Complaint are taken as true. *See* Dkt. No. 1.

In or around August 12, 2012, while incarcerated at Auburn Correctional Facility, Plaintiff underwent knee surgery performed by an outside surgeon. *Id*. at ¶ 6. Plaintiff continued to experience pain for the year and a half following this surgery. During this period of time, Defendant Kooi refused to order Plaintiff a cane, did not provide pain medication, and allowed Plaintiff to continue to be housed on the third floor. In or around January 2014, Plaintiff fell down the stairs when his knee "gave out". *Id*. After learning of the situation, Defendant Koenigsmann failed to remedy the wrongs committed by his subordinates.

## III.  DISCUSSION

Defendants move for dismissal of Plaintiff's civil action on the sole basis that he failed to exhaust his administrative remedies prior to bringing this action.  Dkt. No. 12.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted).  Exhaustion is similarly required even if the prisoner asserts futility as an excuse.  *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)).  Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action.  *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendants.  *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).  Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted.

*Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999) (citations omitted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

Typically, this inquiry is fact specific and would not be appropriate for resolution on a motion to dismiss. However, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *McCoy v.* Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir. 1998) (for the collection of cases cited therein establishing that affirmative defenses, such as the statute of frauds, qualified immunity, *res judicata*, and statute of limitations, may form the basis for a motion to dismiss if apparent from the allegations of the complaint or attachments) (and further citing *Benjamin v. Goord*, 2002 WL 1586880, at *2 (S.D.N.Y. July 17, 2002), for the proposition that dismissal of a complaint that is proper where the plaintiff "admit[ted] that [he] did not pursue any administrative grievance remedies prior to filing [his] action"). Thus, if it is apparent from the face of Shoults's Complaint that he failed to exhaust his administrative remedies prior to bringing this action, then a Rule 12(b)(6) motion may be the proper vehicle to raise the defense.

Plaintiff presented a hand-written version of a *pro forma* complaint typically utilized by *pro se* inmates seeking to vindicate their rights pursuant to 42 U.S.C. § 1983. Therein, Plaintiff indicated that there is a prisoner grievance procedure at his facility, he presented the facts of this

case through that procedure by sending a complaint to the Inmate Grievance Review Committee ("IGRC) and appealing to the Superintendent, but was, presumably at the time of drafting the Complaint, awaiting a "final decision from Albany." Compl. at ¶ 4. Taking Plaintiff's statements in his Complaint as true, it would appear from the face of the Complaint that he had not yet completed the administrative remedies available to him prior to bringing this civil action; thus, Defendants may properly raise this affirmative defense by way of their Motion to Dismiss.

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the IGRC, a committee comprised of both inmates and facility employees.[2] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

---

[2] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

In response to Defendants' Motion, Plaintiff asserts that he had fully exhausted his administrative remedies and provides copies of two grievances he filed as well as the IGRC's and Superintendent's decisions.³ Dkt. No. 14. The first grievance, "AUB-64789-14", which is stamped "received" by the Auburn IGRC on April 21, 2014, concerns Plaintiff's complaints about the problems with his knee. *Id*. at p. 2.⁴ Therein, Plaintiff explains that he had knee surgery in 2012 and continued to be in pain. Because of his complaints to medical staff, an MRI was taken where it was discovered that the ACL that was put in his knee was no where to be found. Plaintiff stated that he is in severe pain every day, is forced to walk up and down the stairs daily, which exacerbates that pain, and that medical staff refuse to give him the correct medication to help with his pain. *Id*. Plaintiff asked that his knee be fixed and that he receive the correct medication. The Court was not provided with the IGRC determination on that grievance, but was provided a Superintendent's decision wherein he "agree[d] with the findings of the IGRC" and granted Plaintiff's appeal to the extent that a follow-up appointment with an orthopedist has been scheduled. *Id*. at p. 3.

Plaintiff's second grievance, "AUB-65018-14", which is stamped "received" by the Auburn IGRC on May 21, 2014, also concerns his problems with his knee. *Id*. at p. 4. Therein,

---

³ In accordance with the applicable standard of review, the Court may properly consider these submissions even though they were not attached to the original Complaint because Plaintiff specifically referenced these documents within his pleading, and thus we find it to be incorporated into the Complaint by reference. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

⁴ In citing to Plaintiff's Response to Defendants' Motion, the Court will reference those page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

Plaintiff explained that at his consultation appointment, he was told that he needed reconstructive surgery; by his grievance he asked that the surgery be performed by a different surgeon and not by the original surgeon or anyone from his practice. *Id*. The IGRC conducted an investigation and granted Plaintiff's grievance to the extent that a referral had been issued by Dr. Kooi for Plaintiff to receive a second opinion from another surgeon and that such referral needed to be approved by the Regional Medical Director. *Id*. at p. 6. At the bottom of that decision, Plaintiff indicated that he agreed with the IGRC response and wished to appeal to the Superintendent. *Id*. On appeal, the Superintendent again agreed with the IGRC findings and granted Plaintiff's appeal to the extent that the referral for a second opinion had been submitted and is subject to the approval of the Regional Medical Director. *Id*. at p. 5.

In reviewing the substance of Plaintiff's grievances, the Court finds that Plaintiff presented the crux of his Eighth Amendment claims utilizing the administrative remedies available to him through the Inmate Grievance Program. In this regard, it appears that Plaintiff presented the facts and circumstances underlying his constitutional claim with regard to his concerns about his knee surgery, the pain he experienced, the failure of medical personnel to provide proper pain medication, and the fact that he had to climb stairs on a daily basis.[5] *Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (citing cases for the proposition that as

---

[5] From what has been presented to the Court, it is not clear whether Plaintiff grieved the fact that he had not been provided with a cane or other ambulatory assistive device. But it is equally unclear at this stage of the litigation whether it would be proper for the Court to parse out every factual allegation presented by Plaintiff as if each single allegation amounted to a separate Eighth Amendment violation, as opposed to viewing all the factual allegations in combination as raising one general claim of deliberate indifference. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 130 n.11 (2013).

long as the prisoner's grievance "present[s] the relevant factual circumstances giving rise to a potential claim . . . sufficient under the circumstances to put the prison on notice of potential claims and to fulfill the basic purposes of the exhaustion requirement . . . . [T]here does not appear to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level"). But, the issue of whether he utilized and exhausted all available remedies is another matter.

The Second Circuit recognized that while the PLRA's exhaustion requirements are mandatory, certain caveats may apply. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (citation omitted). "[A] three-part inquiry is appropriate where a prisoner plaintiff seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA[.]" *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First, depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether such procedures were actually "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d at 667. Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own action inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill v. New York*, 380 F.3d at 686 (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) & *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). Third, the Second Circuit has found that "there are certain 'special circumstances' in which . . . the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."

*Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004). "The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.*

The Superintendent's respective decisions on Plaintiff's grievances are dated May 27, 2014, and July 7, 2014. *Id*. at pp. 3 & 5. And Plaintiff's Complaint was signed by him on September 25, 2014. Despite Plaintiff's statement in his Complaint that he is awaiting a decision from Albany, which could be a reference to CORC, it is not clear whether Plaintiff actually appealed both Superintendent decisions to CORC, nor whether he was mandated to do so. It appears to the Court from what has been presented that Plaintiff received favorable responses to his grievances at both the IGRC and Superintendent levels; thus appealing the matter further may not have been necessary. In other words, upon receiving a favorable decision from the Superintendent, it is possible that no more administrative remedies were available, rendering any appeal to CORC superflluous.[6] *Booth v. Churner*, 532 U.S. 731, 738

---

[6] Previously, there was no mechanism in DOCCS regulations for appealing a favorable determination. *See Abney v. McGinnis*, 280 F.3d 663, 668 (2d Cir. 2004) (noting that while a favorable IGRC response is automatically transmitted to the superintendent for action, "[t]here is no similar procedure available for automatic advancement of a favorable ruling from the superintendent to the CORC"). In 2006, the regulations were amended and a new section was added allowing for oversight and follow-up to ensure implementation of favorable dispositions are carried out. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(c)(4) ("Implementation of decisions. The IGP supervisor or the superintendent must verify compliance with superintendents' responses that require some form of implementation. Documentation of compliance must be filed with the grievance record. If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), *adopted on* June 28, 2006 by New York Regulation Text – Netscan, 2006 NY REG TEXT 7 NYCRR 701 (June 28, 2006), *eff*. July 1, 2006.

(2001) (noting that to be considered "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of"). Accordingly, the Defendants' pre-answer Motion is premature and a resolution of the exhaustion issue must await further factual development.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 12) based upon Plaintiff's failure to exhaust available administrative remedies prior to bringing this action be **DENIED** without prejudice and with leave to renew at a later date upon a fuller record; and it is further

**RECOMMENDED**, that if the above recommendation is adopted by the District Judge, the Defendants should be directed to answer the Complaint; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 28, 2016
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge