**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL SHOULTS, JR.

                              Plaintiff,

        - v -                                                Civ. No. 9:14-CV-1184
                                                                       (GLS/DJS)

MD PANG L. KOOI, *Facility Health Service Director*, and CARL J. KOENIGSMANN, *Chief Medical Officer*,

                              Defendants.

**APPEARANCES:**                                           **OF COUNSEL:**

MICHAEL SHOULTS, JR.
Plaintiff, *Pro Se*
11-B-1527
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

HON. ERIC T. SCHNEIDERMAN                  DENISE P. BUCKLEY, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Michael Shoults Jr. brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Dkt. No. 1, Compl. On November 10, 2016, Defendants filed a Motion for Summary Judgment, pursuant to FED. R. CIV. P. 56(a). Dkt. No. 25, Defs.' Mot. Summ. J. Plaintiff has not filed a response. For the reasons that follow, the Court recommends that

Defendants' Motion be **granted** and this action **dismissed**.

## I. BACKGROUND[1]

The events of this action occurred when Plaintiff was incarcerated at Auburn Correctional Facility ("Auburn C.F.") while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 25-6, Decl. of Denise Buckley, dated Nov. 9, 2016, Ex. B, Dep. of Michael Shoults, dated Sept. 8, 2016 ("Pl.'s Dep.") at p. 8. At the relevant times, Defendant Dr. Pang L. Kooi ("Kooi") was the Facility Health Services Director at Auburn C.F. Dkt. No. 25-10, Decl. of Pang Kooi, dated Nov. 7, 2016, at ¶ 3. As Health Services Director, Kooi was responsible for the medical care of all inmates. *Id*. at ¶¶ 4-5. Defendant Carl J. Koenigsmann ("Koenigsmann") was DOCCS' Chief Medical Officer responsible for the development and implementation of medical policies and practices for the inmates in DOCCS' custody. Dkt. No. 25-11, Decl. of Carl Koenigsmann, dated Oct. 31, 2016, at ¶¶ 3-4. Koenigsmann did not provide medical care to individual inmates. *Id*. at ¶ 5.

In 2011, Plaintiff sustained a torn ACL injury to his right knee while playing basketball in Oswego County Jail. Pl.'s Dep. at p. 10. In August 2012, Plaintiff was confined in the Special Housing Unit ("SHU") at Cayuga Correctional Facility ("Cayuga C.F."). Dkt. No. 25-8, Buckley

---

[1] Plaintiff failed to oppose Defendants' Motion for Summary Judgment. Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement. *Holtz v. Rockefeller & Co., Inc*., 258 F.3d 62, 73 (2d Cir. 2001). Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Facts only when properly supported by the record. Dkt. No. 25-2; *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc*., 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

Decl., Ex. D at p. 4. On August 20, 2012, at the request of DOCCS, Eldridge Anderson ("Anderson")[2] operated on Plaintiff's knee to repair the ACL tear with a cadaver graft. Dkt. No. 26, Buckley Decl., Ex. A ("Pl.'s AHR") at pp. 192-96 & 208. Following the surgery, Plaintiff was transferred from the hospital to the infirmary at Auburn C.F., and remained there for three days. Pl.'s Dep. at pp. 15 & 22; Pl.'s AHR at pp. 176-180. During that time, Plaintiff received an ace wrap, Percocet, Motrin, and crutches. Pl.'s AHR at pp. 187-90.

On August 23, 2012, Kooi discharged Plaintiff to Cayuga C.F. Pl.'s Dep. at p. 58; Pl.'s AHR at p. 188. At Cayuga C.F., Plaintiff received physical therapy, a crutch, Motrin, Tylenol, and Percocet. Pl.'s Dep. at pp. 23-27; Pl.'s AHR at pp. 216 & 218. On August 30, 2012 and September 11, 2012, Anderson re-evaluated Plaintiff. Pl.'s AHR at pp. 203-04.

On September 25, 2012, Plaintiff was transferred to Auburn C.F. and underwent a medical evaluation. Pl.'s Dep. at p. 33; Buckley Decl., Ex. D at p. 3. At that time, Plaintiff did not ask for a crutch, cane, or any other ambulatory device. Pl.'s Dep. at p. 33. Plaintiff was assigned to a cell on the third floor of the facility. *Id.* at pp. at 36 & 39. Upon arriving at Auburn C.F., Plaintiff was prescribed a course of physical therapy for his knee. Pl.'s AHR at pp. 151-58. From October 16, 2012 until November 8, 2012, Plaintiff treated with a therapist on six occasions. *Id.* Plaintiff failed to attend two physical therapy appointments scheduled for October 18, 2012 and October 23, 2012. *Id.* at pp. 156-57. On November 13, 2012, Plaintiff had a follow up visit with Anderson. *Id.* at p. 136.

After Plaintiff completed physical therapy, Plaintiff's knee "gave out" as he was walking

---

[2] Anderson is not a defendant herein.

*-3-*

down the stairs from his cell to the mess hall.[3] Pl.'s Dep. at pp. 33-44. Plaintiff "stumbled," but did not fall, down the stairs. *Id.* at p. 44. Plaintiff walked to emergency sick call where he received Ibuprofen and was told to return the following day for an appointment with the doctor.[4] *Id.* at p. 51.

In May 2013, an x-ray of Plaintiff's right knee revealed mild osteoarthritis. Pl.'s AHR at p. 103. In October 2013, Nurse Practitioner Nancy O'Connor-Ryerson ("Ryerson")[5] and Kooi referred Plaintiff to an orthopedist for complaints of movement in his knee when he climbed stairs.[6] *Id.* at p. 134.

On January 14, 2014, Anderson examined Plaintiff. *Id.* at pp. 125 & 134. On the same day, Ryerson and Kooi referred Plaintiff for an MRI of his right knee. *Id.* at pp. 125 & 132. On February 2, 2014, Plaintiff was treated at sick call for complaints of swelling in his knee. *Id.* at p. 24. The treating provider noted that Plaintiff was not wearing his knee sleeve. *Id.* Plaintiff received Motrin and an ace wrap. *Id.* On March 5, 2014, Plaintiff underwent an MRI of his right knee that revealed a tear of his medial and lateral meniscus. *Id.* at pp. 24 & 102. On April 8, 2014 and May 13, 2014, Plaintiff was examined by Anderson. *Id.* at pp. 130-31.

In April 2014, Plaintiff filed a grievance entitled "Medical Malpractice." Dkt. No. 25-7, Pl.'s Dep. Exs., Ex. A. Plaintiff complained of severe pain as a result of walking up the stairs everyday. *Id.* Plaintiff asked to see a specialist and requested pain medication. *Id.* On May 21, 2014, Plaintiff

---

[3] Plaintiff could not recall when the incident occurred. Pl.'s Dep. at p. 35.

[4] Plaintiff could not recall if he treated with a nurse practitioner or with Kooi the following day. Pl.'s Dep. at p. 59.

[5] Ryerson is not a defendant herein.

[6] Ryerson and Kooi noted that Plaintiff had "no relief [with] rest [and] NSAIDS and moved by security to lower company." Pl.'s AHR at p. 134. Plaintiff testified that he was never moved to a lower level while confined at Auburn C.F. Pl.'s Dep. at p. 64.

filed another grievance objecting to further treatment with Anderson. *Id.*, Ex. B. Plaintiff requested a consult with a different surgeon because he did not "feel comfortable" with Anderson or his medical group. *Id.* Plaintiff's request was approved. *Id.*

In June 2014, Plaintiff was evaluated by Mitchell Rubinovich, MD ("Rubinovich").[7] Pl.'s AHR at pp. 128-29. Rubinovich took x-rays and concluded that Plaintiff should undergo a revision of his ACL and recommended "one of the sports docs." *Id.* at p. 129. On June 30, 2014, Kooi referred Plaintiff for a sports medicine evaluation. *Id.* at p. 126. On August 27, 2014, Plaintiff was examined by Dr. Simpson ("Simpson") at the Harrison Center, Department of Orthopedics.[8] *Id.* Simpson recommended a consult with John P. Cannizzaro, MD ("Cannizzaro") at Upstate Orthopedics.[9] *Id.* On August 28, 2014, Ryerson and Kooi referred Plaintiff to Upstate Orthopedics for a consultation. *Id.* at p. 122.

In September 2014, Plaintiff attended sick call complaining of knee pain. Pl.'s AHR at p. 19. Plaintiff indicated that he did not need crutches but requested different support. *Id.* Plaintiff received Ibuprofen and an ACL brace was ordered. *Id.* at pp. 19 & 122.

On September 25, 2014, Cannizzaro examined Plaintiff and recommended further ACL surgery. *Id.* at pp. 122-23. On December 9, 2014, Plaintiff underwent surgery on his right knee. *Id.* at p. 124. After the surgery, Plaintiff received a cane and Kooi offered Plaintiff a cell "down on the flats."[10] Pl.'s Dep. at pp. 63-64 & 71. Two days after surgery, Kooi discontinued Plaintiff's

---

[7] Rubinovich is not a defendant herein.

[8] Simpson is not a defendant herein.

[9] Cannizzaro is not a defendant herein.

[10] Plaintiff could not recall when Kooi offered him a cell on the bottom floor, but testified that he was transferred out of Auburn C.F. before he was moved to the bottom floor. Pl.'s Dep. at p. 73.

prescription for Percocet. Kooi Decl. at ¶ 41. On December 11, 2014, Plaintiff had a follow up appointment with Cannizzaro, who recommended that Plaintiff be referred for further physical therapy. Pl.'s AHR at p. 124. On the same day, Ryerson and Kooi referred Plaintiff for physical therapy. *Id*. at 103. In January 2015, Plaintiff attended seven sessions with the physical therapist. *Id*. at pp. 109-13.

On February 10, 2015, at the request of Ryerson and Kooi, Plaintiff was examined by Anderson. *Id.* at p. 104. On February 23, 2015, Plaintiff was transferred from Auburn C.F. to Coxsackie Correctional Facility ("Coxsackie C.F."). Buckley Decl., Ex. D at p. 3.

While Plaintiff was confined at Auburn C.F., he was prescribed Gabapentin, Meloxicam, and Percocet for knee pain. Pl.'s AHR at pp. 18, 19, 22, & 160-77. Plaintiff also received Ibuprofen and permission from Kooi to take medical showers.[11] Pl.'s Dep. at pp. 59-60.

## II. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287

---

[11] Inmates with permits for medical showers were able to shower in the gallery rather than walking outside to take a shower. Pl.'s Dep. at p. 60.

(2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show

that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

### III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) there are no disputed issues of material fact precluding summary judgment on Plaintiff's deliberate medical indifference claims; (2) Plaintiff failed to establish that Koenigsmann was personally involved in any alleged constitutional violations; (3) Plaintiff failed to exhaust his administrative remedies on his claim related to his cane; and (4) Defendants are entitled to qualified immunity. Dkt. No. 25-3, Defs.' Mem. of Law.

#### A. Eighth Amendment

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant

to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id*. Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id*. The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id*. at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving

on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

*1. Objective Prong*

In this case, Plaintiff's medical records demonstrate that he was repeatedly treated at sick call for complaints of right knee pain after his initial surgical reconstruction. *See* Pl.'s AHR at pp. 14-25 & 51-52. The record further establishes that Plaintiff attended several orthopedic consultations, received medications and a knee sleeve/brace, x-rays, an MRI, and underwent a

second surgery to repair a torn ACL due to a prior "failed ACL reconstruction." *Id.* at pp. 19, 20, 24, 102, 103, 122, 123, 124, 126, 129, 130, 131, & 134. Insofar as Defendants argue that *Seely v. Boehlert*, 2013 WL 4780908 (W.D.N.Y. Sept. 5, 2013) supports the conclusion that Plaintiff's knee injury is not a "serious medical need," the Court disagrees. Defs.' Mem. of Law at p. 9. In *Seely*, the plaintiff's radiological films were within normal limits and his medical records were void of any complaints of knee pain, requests for orthopedic consultations, an MRI, or bunk pass. *Seeley v. Boehlert*, 2013 WL 4780908, at *7.

Thus, the Court finds that there are questions of fact as to whether Plaintiff's knee injury was "sufficiently serious" to satisfy the objective prong. *See Miller v. Rao*, 2013 WL 6240672, at *6 (W.D.N.Y. Dec. 3, 2013) (finding, on motion for summary judgment, that the plaintiff's allegations of residual pain in his surgically reconstructed right knee were sufficiently serious to meet the objective component of his deliberate indifference claim).

### 2. *Subjective Prong*

Plaintiff must also show that Defendants acted with a mental state akin to criminal recklessness. *See Farmer v. Brennan*, 511 U.S. at 836-37. Liberally construed, Plaintiff alleges that Defendants deprived him of constitutionally adequate medical care and delayed his treatment.[12]

#### a. Adequacy of Treatment

Plaintiff claims that Defendants violated his Eighth Amendment rights when they failed to provide pain medication, housed him on the third floor of the facility, and denied his requests for a cane. Pl.'s Dep. at pp. 63, 64, 70, 71, 83, 88, 92, 100, & 101. Defendants argue that the record

---

[12] The Court notes Defendants' argument that Koenigsmann was not personally involved in Plaintiff's medical care. Defs.' Mem. of Law at p. 15. Because the Court recommends that summary judgment be granted on Plaintiff's deliberate medical indifference claims, it does not reach the issue of whether Koenigsmann was personally involved in Plaintiff's medical care.

is void of any evidence of recklessness and contend that Plaintiff's allegations amount to nothing more than a personal disagreement with Kooi's treatment decisions. Defs.' Mem. of Law at pp. 13-14.

### *i. Pain Medication*

Plaintiff filed a grievance complaining that his medication did not alleviate his pain, and claimed that he was not receiving the proper pain medication. Pl.'s Dep. at p. 65; Pl.'s Dep. Exs., Ex. A. Plaintiff testified that when he complained about his medication, Kooi responded with adjustments in dosage and types of medication, but refused to provide the "necessary" pain medication. Pl.'s Dep. at pp. 74, 75, 83, & 85. Plaintiff does not dispute that he received various medications for his complaints of pain including Tylenol, Gabapentin, Meloxicam, and ibuprofen. *Id.* at p. 76; Pl.'s AHR at pp. 22, 24, 30.

Based upon the record before the Court, Plaintiff's disagreement with Defendants' medical judgment, under these facts, cannot provide the basis for a civil rights claim, because a doctor's decision about the type of medicine that should be prescribed is generally a medical judgment that is an inappropriate basis for imposing liability under § 1983. *See Chance v. Armstrong*, 143 F.3d at 703; *Vail v. Lashway*, 2014 WL 4626490, at *14 (N.D.N.Y. Sept. 15, 2014) ("[T]he decision to choose one form of pain medication over another, even if the medication causes side effects, is not indicative of deliberate indifference."); *Scott v. Perio*, 2005 WL 711884, at *6 (W.D.N.Y. Mar. 25, 2005) ("It is not for the Court to second guess plaintiff's medical providers as to what medicine or what dosage should have been prescribed to treat the plaintiff.").

Plaintiff's claim that Kooi exhibited deliberate indifference when he prematurely discontinued his prescription for Percocet after his second surgery, is similarly deficient. Pl.'s Dep.

at pp. 88-89 & 101. The record is void of evidence that Defendants acted deliberately and discontinued Plaintiff's pain medication as a form of punishment. *See Aikens v. Rao*, 2015 WL 5919950, at *4-5 (W.D.N.Y. Oct. 9, 2015) (finding that the defendant's decision to wean the plaintiff from Ultram was based upon medical judgment); *see also Shepherd v. Fisher*, 2017 WL 666213, at *10 (S.D.N.Y. Feb. 16, 2017) (stating that even if the plaintiff demonstrated that the defendants acted unreasonably in discontinuing his Percocet prescription, that would be insufficient to survive summary judgment because a plaintiff must demonstrate deliberate indifference). At best, the decision to discontinue a course of treatment suggests negligence, not a constitutional violation. *Fuller v. Lantz*, 549 F. App'x 18, 21 (2d Cir. 2013) (holding that the decision to discontinue medication to treat tuberculosis does not "make out a constitutional violation").

Based upon the record presently before the Court, no reasonable factfinder could conclude that Defendants were deliberately indifferent to Plaintiff's medical needs with respect to his medication.

### *ii. Housing and Ambulatory Devices*

Plaintiff also claims that Defendants were deliberately indifferent to his medical needs because he was housed on the third floor of the facility and Defendants' refused to approve Plaintiff's requests for a cane. Pl.'s Dep. at p. 92. Defendants argue that Plaintiff never requested a cell on a lower level or a cane. Defs.' Mem. of Law at p. 14. Plaintiff testified that he did not ask to be moved to another cell and that he could not recall asking Kooi for such a transfer. Pl.'s Dep. at pp. 36, 42, & 74. Plaintiff also testified he did not "know a specific date" that he asked Defendants for a cane or crutches. *Id.* at 78.

Even assuming that Plaintiff explicitly requested a cane and a transfer to the lower level,

"[a]s a preliminary matter, [the plaintiff] must establish that it was medically necessary for him to avoid climbing stairs in order to prevail" on an Eighth Amendment deliberate indifference claim. *Dobbin v. Artuz*, 143 F. Supp. 2d 292, 302 (S.D.N.Y. 2001). Here, Plaintiff has failed to present admissible proof of a medical need for alternate housing or an ambulatory device. Plaintiff testified that he climbed the stairs each day to shower, eat, go to commissary, or programs. Pl.'s Dep. at p. 35. The fact that Plaintiff fell on the stairs is insufficient to demonstrate a need to avoid the stairs. *See Dobbin v. Artuz*, 143 F. Supp. 2d at 303. In addition to traversing the stairs, Plaintiff would go to the yard, "work out" three times a week for one hour, shoot basketball, and attend programs. Pl.'s Dep. at pp. 41-43. In Plaintiff's records, there are notations that he refused to accept crutches during two sick call visits in September 2014. Pl.'s AHR at pp. 19-20.

Plaintiff's belief that Defendants should have provided a cane, alternate housing, or done something different is nothing more than a dispute over the appropriate course of treatment, which does not state an Eighth Amendment claim. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986); *see also Alvarado v. Ramineni*, 2011 WL 6937477, at *10 (N.D.N.Y. Dec. 6, 2011) ("Any allegation that Plaintiff should have been transferred to a flat facility, should have had a no-stairs permit, and should have had a cane throughout his stay at Mid-State, are at most differences in treating opinions and thus do not give rise to an Eighth Amendment violation."); *see also Tolliver v. Sidorowicz*, 2017 WL 835193, at *5 (S.D.N.Y. Mar. 2, 2017) (holding that the plaintiff's disagreement with the defendants' decisions regarding the plaintiff's need for a cane demonstrates a difference of opinion, not a constitutional violation).

### b. Delay in Treatment

Plaintiff contends that Defendants violated the Eighth Amendment because he was not

treated in a timely fashion. *See* Pl.'s Dep. at pp. 61, 63, 72, & 84. "Cruel and unusual punishment may consist of prison officials delaying an inmate access to needed medical care." *Kaminsky v. Rosenblum*, 929 F.2d 922, 926 (2d Cir. 1991). However, "[a] delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment." *Amaker v. Coombe*, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002). The Second Circuit "has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (table), 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999) (citations omitted).

The record before the Court establishes that Defendants responded to Plaintiff's complaints of pain without significant delay or gaps in treatment of Plaintiff's condition. Upon Plaintiff's arrival at Auburn C.F. in September 2012, he received a course of physical therapy for his knee. Pl.'s AHR at pp. 151-58. In November 2012, Plaintiff had a follow up visit with the orthopedic surgeon who performed his first surgical procedure. *Id.* at p. 136. In January 2013, Plaintiff complained of knee pain. *Id.* at p. 52. While Plaintiff continued to attend sick call in February, March, and April 2013, Plaintiff did not make any complaints related to his knee during those visits. *See id.* at pp. 42-52. In May 2013, after Plaintiff complained of bilateral knee pain, Plaintiff had an x-ray of his right knee. *Id.* at pp. 41 & 103. From January 2014 through March 2015, Plaintiff attended approximately twenty sick call visits with medical staff and providers at Auburn C.F. for

complaints of knee pain, without any evidence of a delay. *Id*. at pp. 14-25. During that time, Plaintiff received extensive treatment including medication, eight consultations with four different orthopedic specialists, a knee sleeve/brace, an MRI, and a permit to take medical showers. *Id*. at pp. 19, 20, 24, 102, 122, 123, 124, 126, 129, 130, 131, & 134. Upon receipt of recommendations from Plaintiff's orthopedic consultations, Kooi and Reyerson referred Plaintiff for suggested treatment, including a second surgical procedure, without delay. *Id*. at 19, 20, 24, 102, 122, 123, 124, 126, 129, 130, 131, & 134. Following his second surgery, Plaintiff was again referred for physical therapy. *See id.* at p. 114. Plaintiff has therefore failed to produce any evidence that there was any delay in his course of treatment that resulted from Defendants' deliberate indifference to his medical needs.

Given that Plaintiff has failed to show that the Defendants acted with deliberate indifference, his Eighth Amendment claims fail as a matter of law. Thus, the Court recommends that Defendants' Motion for Summary Judgment be **granted**.[13]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 25) be **GRANTED** and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

---

[13] Because the Court recommends that Plaintiff's claims are subject to summary judgment, it finds it unnecessary to address Defendants' failure to exhaust and qualified immunity arguments.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: May 25, 2017
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge